**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**AT LEXINGTON**

**CIVIL ACTION NO. 14-246-DLB**

**JAMEY HODGE**                                                                                      **PLAINTIFF**


vs.                          **MEMORANDUM OPINION AND ORDER**


**CAROLYN W. COLVIN,**
**Commissioner of Social Security**                                                     **DEFENDANT**

*** *** *** *** *** *** *** *** ***

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence.

## I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Jamey Hodge protectively filed his current application for Supplemental Security Income ("SSI") payments, alleging disability as of March 18, 2002. (Tr. 172-174). Plaintiff's claim was denied initially and on reconsideration. (Tr. 83-85). On November 12, 2008 and February 11, 2009, Administrative Law Judge Charles J. Arnold conducted administrative hearings at Plaintiff's request. (Tr. 18-28, 43-56). ALJ Arnold ruled that Plaintiff was not entitled to benefits on April 24, 2009. (Tr. 7-17). This decision became the final decision of the Commissioner when the Appeals Council denied review on October 27, 2009. (Tr. 1-4).

1

Plaintiff appealed that decision to this Court on December 30, 2009. *See* Case No. 5:09-416-DCR (Tr. 386). The Commissioner ultimately acknowledged that remand was appropriate "to allow the ALJ to reevaluate the Plaintiff's residual functional capacity for sedentary work in light of the functional limitations identified by Dr. Fritzhand and the state agency physician." (Tr. 403-08). Accordingly, the Court remanded the matter for further administrative proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g) on July 7, 2010. (*Id.*). The Appeals Council then vacated the final decision of the Commissioner and remanded the case to Administrative Law Judge Don C. Paris on September 24, 2010. (Tr. 409-12).

ALJ Paris held an additional hearing on June 9, 2011. (Tr. 344-81). Plaintiff and Vocational Expert Jackie B. Rogers testified at this proceeding. (*Id.*). On July 7, 2011, ALJ Paris found that Plaintiff has not been under a disability since the application date. (Tr. 383-98). Plaintiff's non-attorney representative, Kim Murphy, drafted written exceptions to ALJ Paris' decision and submitted them to the Appeals Council for review. (Tr. 32). The Appeals Council considered these exceptions and found no reason to assume jurisdiction, thus making ALJ Paris' decision the final decision of the Commissioner on April 17, 2014. (Tr. 339-42).

On June 19, 2014, Plaintiff filed the instant action. (Docs. # 1 and 2). Plaintiff asks this Court to reverse the Commissioner's most recent decision and order an outright award of benefits. (Doc. # 10-1 at 8). This matter has culminated in cross motions for summary judgment, which are now ripe for the Court's review. (Docs. # 10 and 11).

## II. DISCUSSION

### A. *Overview of the Process*

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform his past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *See Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.,* 14 F.3d 1107, 1110 (6th Cir. 1994).

*B.     The ALJ's Determination*

At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date. (Tr. 388). At Step 2, the ALJ determined that Plaintiff's chronic backache, morbid obesity, anxiety disorder not otherwise specified and avoidant and dependent features are severe impairments within the meaning of the regulations. (*Id.*). The ALJ further found that Plaintiff's hypertension constitutes a non-severe impairment. (*Id.*).

At Step 3, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments listed in, or medically equal to, an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 391-93). The ALJ first noted that Plaintiff's physical impairments did not meet or equal Listing 1.04 (spine disorders) because "the record is devoid of evidence of nerve root compression, spinal arachnoiditis or lumbar spinal stenosis." (*Id.*). Although obesity has been deleted from the Listing of Impairments, the ALJ accounted for the cumulative effects of this condition in reaching his conclusion. (*Id.*).

The ALJ further found that Plaintiff's mental impairments did not meet or medically equal Listing 12.06 (anxiety-related disorders) or Listing 12.08 (personality disorders). (*Id.*). In making this determination, the ALJ noted that Plaintiff has only mild restrictions in activities of daily living and moderate difficulties in social functioning. (*Id.*). Plaintiff testified that he is independent in caring for his personal needs. (*Id.*). He typically spends his time watching television, caring for his dog and accompanying his mother on errands. (*Id.*). He is capable of driving, cleaning and mowing the yard. (*Id.*). Plaintiff interacted appropriately

with the ALJ at the hearing and reported no problems getting along with friends and family. (*Id.*). The ALJ found that Plaintiff has moderate difficulties with concentration, persistence or pace, noting that he does not require special reminders, can follow spoken directions and is able to hunt and fish. (*Id.*). Given Plaintiff's mild to moderate limitations in these areas, combined with a lack of episodes of decompensation, the ALJ found that he did not meet the criteria for either Listing. (*Id.*).

At Step Four, the ALJ concluded that Plaintiff has the residual functional capacity (RFC) to perform a significant range of sedentary work, as defined in 20 C.F.R. § 416.967(a); that is:

> [t]he claimant can occasionally lift/carry ten pounds, frequently less than ten pounds; stand/walk at least two hours during an eight-hour workday; however, he requires a sit/stand option with no prolonged standing or walking in excess of thirty minutes without interruption. He should perform no more than frequent push or pull or use of foot controls with the lower extremities; only occasional climbing stairs/ramps, never climbing ladder/rope/scaffolds; only occasional balancing, stooping, kneeling or crouching; never crawling; he should avoid concentrated exposure to extreme heat, humidity, full body vibration and he should avoid all hazards such as unprotected heights and dangerous machines. The claimant has the mental ability to understand, remember and carry out simple work instructions; sustain attention to complete simple repetitive work tasks for two hour segments in an eight-hour workday in a low stress object focused work setting in which contact with coworkers is casual and infrequent in a non-public work setting[;] and adapt to routine chances and pressures of a routine work environment.

(Tr. 393). The ALJ further noted that Plaintiff has no past relevant work. (Tr. 397).

Accordingly, the ALJ proceeded to the final step of the sequential evaluation. At Step 5, the ALJ found that there are a significant number of jobs in the national economy that Plaintiff could perform. (Tr. 397-98). The ALJ based this conclusion on testimony from a vocational expert ("VE"), in response to a hypothetical question assuming an individual of Plaintiff's age, education, work experience, and RFC. (*Id.*). The VE testified that a

hypothetical individual with Plaintiff's vocational profile and RFC could find sedentary unskilled work as bench assembly (6,900 Kentucky/460,000 nationally) or order clerk (6,900 Kentucky/350,000 nationally). (Tr. 398). Based on the testimony of the VE and Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff is capable of making a successful adjustment to other work and thus concluded that he was not under a "disability," as defined by the Social Security Act. (*Id.*).

## C. *Analysis*

Plaintiff complains that the ALJ "erred by finding that [his] age, education, work experience and residual functional capacity enabled him to do any other work pursuant to step five of the sequential evaluation process." Doc. # 10 at 1). This argument is two-fold. First, Plaintiff asserts that the VE's testimony was inconsistent with the Dictionary of Occupational Titles. He then contends that the ALJ failed to resolve this conflict in the evidence. Thus, Plaintiff concludes that the VE's testimony is an inadequate basis for finding he is "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Doc. # 10-1 at 6-7; Tr. 398).[1]

### 1. The VE's testimony was not inconsistent with the Dictionary of Occupational Titles

At the fifth step of the disability determination analysis, the burden shifts to the Commissioner to establish the claimant's ability to do other work. *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 603 (6th Cir. 2009). The ALJs may consider "'reliable job information'" from various vocational publications "as evidence of the claimant's ability to

---

1) These seem to be the only alleged points of error developed on appeal. Any other "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation," are waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).

6

do other work 'that exists in the national economy." *Id.* (quoting Soc. Sec. Rul. 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000)); *see also* 20 C.F.R. §§ 404.1566(d), 416.966(d).  Such publications include the Dictionary of Occupational Titles ("DOT"), which "includes information about jobs (classified by their exertional and skill requirements) that exist in the national economy." *See* Soc. Sec. Rul. 00-4p, 2000 WL 1898704, at *2.  ALJs may also "consider the testimony of so-called 'vocational experts' ("VEs") as a source of occupational evidence."[2] *Id.*; *see Anderson v. Comm'r of Soc. Sec.*, 406 F. App'x 32, 35 (6th Cir. 2010) (stating that the ALJ may rely on the VE's testimony so long as it is given in response to an accurate hypothetical).

The ALJ must identify any conflicts between occupational evidence provided by the VE and information set forth in the DOT.  *See* Soc. Sec. Rul. 00-4P, 2000 WL 1898704, at *1 (Dec. 4, 2000).  The ALJ is then responsible for obtaining a reasonable explanation of these conflicts and detailing his or her resolution thereof.  *Id.*  Unless such conflicts are appropriately addressed, the ALJ may not rely on the VE's testimony to support a disability determination.  *Id.*

---

2) At Step 5, the ALJ also considers the Medical-Vocational Guidelines listed in 20 C.F.R. Part 404, Subpart P, Appendix 2.  As ably stated by ALJ Paris, "[i]f the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either 'disabled' or 'not disabled' depending upon the claimant's specific vocational profile (SSR 83-11)." (Tr. 397).  If the claimant is unable to perform "substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decision-making," unless there is a rule directing a conclusion of 'disabled' without consideration of these additional limitations.  (*Id.*).

In this case, "[i]f the claimant had the residual functional capacity to perform the full range of sedentary work, a finding of 'not disabled' would be directed by Medical-Vocational Rule 201.27." (*Id.*).  However, the ALJ found that the "claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations." (*Id.*).  The ALJ then used the VE's testimony to "determine the extent to which these limitations erode the unskilled sedentary occupational base." (*Id.*).  Again, it is this testimony that is the focus of Plaintiff's appeal.

7

The DOT assigns all occupations a specific vocational preparation ("SVP") number, which is defined as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." *See* The Dictionary of Occupational Titles, Appendix C, Section II (*available at* www.occupationalinfo.org). An SVP 1 indicates that only a short demonstration is necessary, while an SVP of 2 corresponds to "[a]nything beyond a short demonstration up to and including [one] month." *Id.* An occupation cannot be classified as unskilled work if it carries an SVP higher than 1 or 2. *See* 20 C.F.R. §§ 404.1568, 416.968; *see also* Soc. Sec. Rul. 00-4P, 2000 WL 1898704, at *1 ("Although there may be a reason for classifying an occupation's skill level differently than in the DOT, the regulatory definitions of skill levels are controlling.").

In this case, ALJ Paris found that Plaintiff had an RFC to perform unskilled sedentary work. (Tr. 397). He then asked the VE whether jobs exist in the national economy for a hypothetical individual with Plaintiff's age, education, work experience and residual functional capacity. (*Id.*). The VE testified that Plaintiff would be able to perform the requirements of representative occupations such as bench assembly (6,900 Kentucky/460,000 nationally) or order clerk (6,900 Kentucky/350,000 nationally). (Tr. 398). The VE explicitly stated that these were unskilled sedentary positions carrying an SVP of 2. (Tr. 376). Based on this testimony, the ALJ concluded that Plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (*Id.*).

The DOT provides almost identical descriptions of bench assembly and order clerk positions. *See* The Dictionary of Occupational Titles, # 574.685-010 and # 209.567-014

(*available at* www.occupationalinfo.org).³ It characterizes both occupations as sedentary positions requiring an SVP of 2. *Id.* Nevertheless, Plaintiff complains that order clerk is not an appropriate representative occupation because it carries a General Educational Development ("GED") Reasoning Level of 3. (Doc. # 10-1 at 6-7).

The GED scale "embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance." *See* The Dictionary of Occupational Titles, Appendix C, Section III (*available at* www.occupationalinfo.org). It is an *advisory* scale composed of three divisions: Mathematical Development, Language Development and Reasoning Development. *Id.*; *see also Matelski v. Comm'r of Soc. Sec.*, 149 F.3d 1183, 1998 WL 381361, at *6 (6th Cir. 1998) (stating that "[t]he reasoning development requirements [of the DOT] . . . are merely advisory in nature"). For positions that carry a GED Reasoning Level of 3, an individual should be able to "[a]pply commonsense understanding to carry out instructions furnished in written, oral or diagrammatic form" and "[d]eal with problems involving several concrete variables in or from standardized situations." *See* The Dictionary of Occupational Titles, Appendix C, Section III.

In making this argument, Plaintiff fails to explain why his representative occupations cannot carry a GED Reasoning Level of 3. The ALJ specifically indicated that Plaintiff had an RFC to perform sedentary *unskilled* work, thus indicating that appropriate representative occupations must carry an SVP of 1 or 2. (Tr. 397-98). He never states that these occupations must also carry a GED Reasoning Level of 3. Perhaps Plaintiff seeks to

---

3) Although the VE and ALJ generally refer to DOT #574.685-010 as the listing for bench assembly, its specific title is "coater-brake linings."

9

equate the SVP scale to the GED Reasoning Levels, so that an SVP of 2 would correspond to a GED Reasoning Level of 2. Unfortunately for Plaintiff, the Court is not aware of any authority requiring him to do so. These two indices are intended to describe different vocational requirements.[4] Whereas the one denotes the time needed to "learn" the particular position, the other speaks to the general critical thinking skills required for it. The Court also has reason to believe that these indices are considered differently by ALJs and VEs alike. After all, federal regulations tie the SVP scale to various categories of work (unskilled, semi-skilled or skilled). GED Reasoning Levels, by contrast, are purely advisory guidelines created by the DOT.[5]

Plaintiff also fails to explain why he cannot perform a position carrying a GED Reasoning Level of 3. From the Court's view, there is nothing about GED Reasoning Level 3 that exceeds Plaintiff's capabilities. The ALJ found that Plaintiff is able to "understand, remember and carry out simple work instructions; sustain attention to complete simple repetitive work tasks for two hour segments in an eight-hour workday in a low stress object focused work setting in which contact with coworkers is casual and infrequent in a non-

---

4) The VE made a similar point during cross-examination. (Tr. 379-80). While these indices measure different vocational requirements and do not directly equate number-wise, the VE made an astute practical observation that the Court finds persuasive. "If something takes less than 30 days to learn then the reasoning level is not going to be that high, or needed to be that high to accomplish the task." (*Id.*).

5) Plaintiff briefly states that "the ALJ never addressed reasoning requirements at all despite that it was brought up at the hearing and in a supplemental brief and he was required to take administrative notice of it." (Doc. # 10-1 at 7). The record reflects that Plaintiff's representative did indeed cross-examine the VE on this point and submit a supplemental brief about it. (Tr. 378-380, 446-47). Just because the ALJ did not specifically mention this issue in his analysis does not mean that he ignored it. Even if the ALJ failed to fully consider the GED Reasoning Levels, the Court would remind Plaintiff that they are purely advisory. Thus, the ALJ was under no obligation to consider them.

public work setting." (Tr. 393). The ALJ also concluded that Plaintiff is able to "adapt to routine chances and pressures of a routine work environment." (*Id.*). Thus, the Court finds no conflict between the VE's testimony and the DOT regarding the representative occupation of order clerk.

2.  **The ALJ did not fail to resolve any conflicts in the evidence**

For reasons stated above, the Court found that Plaintiff failed to establish the existence of a conflict between the VE's testimony and information contained in the DOT.[6] Absent such a conflict, the Court simply cannot find that the ALJ failed to do his due

---

6) In fact, the only discernible discrepancy between these two sources concerns a sit/stand option. The Court is under no obligation to consider this inconsistency, as it was not identified in Plaintiff's Motion. However, it will briefly address the issue because the Commissioner briefed it in detail.

The VE indicated that bench assembly and order clerk positions would allow a worker to alternate sitting and standing. (Tr. 376). The DOT does not address the availability of a sit/stand option. It is unclear whether this inconsistency even qualifies as a conflict requiring resolution in accordance SSR 00-4p. Some courts within the Sixth Circuit have held that it is not. *See, e.g., Reed v. Comm'r of Social Sec.*, No. 1:10-cv-350, 2011 WL 4571813, at *9 (W.D. Mich. Sept. 30, 2011) ("As courts recognize, '[b]ecause the DOT does not address the subject of sit/stand options,' testimony from a vocational expert that there exist jobs which a claimant, subject to a sit/stand limitation, can perform is not in conflict with the DOT."). Even if such a conflict exists, the ALJ appropriately identified, explained and resolved it in his hearing decision:

> In response to inquiry by the undersigned, the vocation expert acknowledged that the DOT fails to address or recognize a vocational sit/stand option. The vocational expert addressed this inconsistency by testifying that, based on her experience in the field of vocational rehabilitation in matching disabled workers with specific vocations[,] she had found that a significant number of jobs in the national economy at the light and sedentary exertional level would accommodate a sit/stand option. Furthermore, the vocational expert testified that such an opinion was based upon years of specific job analysis of various occupations. The vocational expert further testified that the jobs cited herein as examples would accommodate a sit/stand option and that the total numbers available had been reduced to reflect the sit/stand option. Based on this testimony, the undersigned concludes, and so finds, that any inconsistency existing in regard to occupations available to the claimant in the national economy and the DOT description of such jobs has been resolved.

(Tr. 398).

diligence. After all, the ALJ cannot fail to identify a conflict that does not exist, let alone resolve it. Plaintiff's second argument is therefore moot.

### III. CONCLUSION

Accordingly, for the reasons stated herein, **IT IS ORDERED** as follows:

(1) The decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED**;

(2) Plaintiff's Motion for Summary Judgment (Doc. # 10) is hereby **DENIED**;

(3) Defendant's Motion for Summary Judgment (Doc. # 11) is hereby **GRANTED.**

A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

This 30th day of April, 2015.



Signed By:
*David L. Bunning*   DB
United States District Judge

G:\DATA\SocialSecurity\MOOs\Lexington\14-246 Hodge MOO.wpd